NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

OHIO HOIST MANUFACTURING CO.,
Respondent.

No. 73-1480.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1973.

Decided April 25, 1974.

Peter Bernstein, N. L. R. B., for petitioner; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Asst. Gen. Counsel, Abigail Cooley Baskir, Carolyn I. Polowy, Attys., N. L. R. B., Washington, D. C., on brief.

Robert A. Dimling, Cincinnati, Ohio, for respondent; Daniel P. Dooley, Frost & Jacobs, Cincinnati, Ohio, on brief.

Before PECK and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

This case is before the Court upon the application of the N. L. R. B. for enforcement of the Board's Supplemental Decision and Order, issued on March 19, 1973, reported at 202 NLRB No. 68. On March 8, 1971, the Board issued its Decision and Order (188 NLRB 137) against the Company, Ohio Hoist Manufacturing Company, for violating Section 8(a)(3) and (1) of the Act in discharging employees Edmund Ross Braham, Jr., Raymond E. Langdon, and Frank C. Smith because of Union activities. Again on April 9, 1971, the Board issued its Decision and Order (189 NLRB No. 96) against the Company for violating Section 8(a)(3) and (1) of the Act in the discharge of employee Charles L. Ferguson because of Union activities. These orders required the Company to reinstate and make whole the discharged employees. Thereafter, on petition of the Board to this Court for enforcement, a consent judgment was entered enforcing in full, against the Company, both orders of the Board.

The Supplemental Decision and Order of the Board, now before the Court, fixes the amount of back pay due each employee from the date of discharge to the date of reinstatement as follows: Ed-

mund R. Braham, Jr., $5,126.23; Raymond E. Langdon, $2,732.37; Frank C. Smith, $5,621.97 and Charles L. Ferguson, $5,369.64. These amounts are arrived at by determining what each employee would have earned with the Company had he not been discharged, calculated on his average earnings prior to discharge, less money earned in other employment during the period of discharge.

The Company does not dispute the Board's calculation of the employees' earnings with the Company, its method of computing gross back pay, nor its right to require back pay awards under proper proof. The Company maintains that all of the employees negligently or wilfully failed to mitigate damages by making adequate efforts to secure interim employment and that therefore, they are not entitled to receive any back pay for the period of discharge.

The rule with reference to proof in a back pay proceeding is well stated in N. L. R. B. v. Brown & Root, Inc., 311 F.2d 447 (C.A. 8) at p. 454,

> "And, it may be conceded that in a back pay proceeding the burden is upon the General Counsel to show the gross amounts of back pay due. When that has been done, however, the burden is upon the employer to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability."

See also N. L. R. B. v. Mastro Plastics Corporation, 2 Cir., 354 F.2d 170.

The Company claims that it has sustained its burden as shown from the testimony of the employees themselves. It says that the employees' own accounts of their efforts to obtain interim employment does not demonstrate good faith efforts on their part. The Administrative Law Judge who heard the evidence on the supplemental proceedings to establish the amount of back pay awards made Findings of Facts and Conclusions of Law. He found that the Company had failed to carry the burden of proving that the employees' attempts to obtain interim employment was inadequate and that therefore the employees were entitled to back pay in the amount as hereinbefore set forth with interest. We conclude that these findings and conclusions are supported by substantial evidence.

In addition to the claim of the Company that the employees did not make good faith efforts to obtain employment, it asserts that the gross pay of Langdon and Ferguson should be reduced because of absenteeism; that Langdon should be denied back pay during the time he held part time jobs in the discharge period and that Ferguson's back pay should be reduced by an amount he was paid while participating in a manpower training program.

There is no merit to the claims with reference to absenteeism. Since the earnings with the Company during the discharge periods were based on average earnings prior to discharge, absenteeism would have been reflected in those averages. Rather than condemn Langdon for accepting part time jobs after he was discharged, he should be commended for it. There is no evidence that had he spent that time looking for a full time job he would have been successful.

On December 13, 1971, Ferguson enrolled in a Manpower Training Program to learn welding skills. When he received the offer of reinstatement from the Company on December 17, 1971, he decided to stay on the training program rather than accept reemployment with the Company. During the week of December 13–17 while on the training program he received $76.00 from the State of Ohio, part of which was for travel expenses. We conclude that this was tantamount to having accepted a permanent job on December 13, and terminating his relationship with the Company at that time.

We grant enforcement of the Board's Order subject to a termination of back pay for Ferguson as of December 13, 1971.