856 F.2d 627
 129 L.R.R.M. (BNA) 2447, 57 USLW 2247,
109 Lab.Cas. P 10,688
 LUNDY PACKING COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Local 525, Meat, Food and Allied Workers Union, United Food
and Commercial Workers International Union, AFL-CIO & CLC,
now known as Local 204, United Food and Commercial Workers
International Union, AFL-CIO & CLC, Intervenor.
 No. 87-3888.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 11, 1988.
Decided Sept. 7, 1988.
 
 James M. Miles (Joseph A. Rhodes, Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, Greenville, S.C., on brief), for petitioner.
 Helen Leora Edwards Marsh (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel; Robert E. Allen, Associate Gen. Counsel, Linda Dreeben, Supervisory Attorney, Washington, D.C., Julie Broido, N.L.R.B., on brief), for respondent.
 Irving Maurice King (Michael H. Slutsky, Cotton, Watt, Jones & King, Chicago, Ill., on brief), for intervenor.
 Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Lundy Packing Company petitions for review of a supplemental decision and order by the National Labor Relations Board that directs payment of back pay to two discharged employees and forty-four unfair labor practice strikers. Lundy Packing Co., 286 NLRB No. 11 (September 30, 1987). The Board filed a cross-application for enforcement of the supplemental decision and order. This court granted the motion of Local 525 Meat, Food and Allied Workers Union, United Food and Commercial Workers International Union, AFL-CIO & CLC (the union) for leave to intervene in these proceedings. We deny the petition for review and grant enforcement of the Board's order.
 
 I.
 
 2
 In April, 1974, the union instituted an organizational campaign at petitioner's Clinton, North Carolina meatpacking plant. Two employees subsequently were discharged for their active support of the organizational campaign and forty-four other employees were refused reinstatement after they participated in a strike in protest of petitioner's unfair labor practices. On March 19, 1976, the Board found that the company had violated Sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(3) & 158(a)(1), by discharging the two employees and by refusing to reinstate the forty-four unfair labor practice strikers. Lundy Packing Co., 223 NLRB 139 (1976). The Board directed the company to reinstate the forty-six employees and make them whole for any loss of earnings suffered as a result of the company's unfair labor practices. This court enforced the Board's order in relevant part. Lundy Packing Co. v. NLRB, 549 F.2d 300 (4th Cir.1977), cert. denied, 434 U.S. 818, 98 S.Ct. 57, 54 L.Ed.2d 74 (1977).
 
 
 3
 Hearings began in April, 1979, before an Administrative Law Judge to resolve the back pay issue. The hearings extended over a six month period, included the testimony of more than one hundred witnesses, and resulted in a transcript that approached 10,000 pages. The ALJ issued his findings in two parts on August 25, 1981 and September 25, 1981. On September 30, 1987, the Board issued its supplemental decision and order adopting the ALJ's findings and conclusions as modified by the Board. Lundy Packing Co., 286 NLRB No. 11 (September 30, 1987). Specifically, the Board affirmed the ALJ's determination that each of the workers engaged in reasonably diligent job searches and therefore were entitled to back pay. The Board, however, reversed the ALJ's tolling of back pay for six workers who temporarily discontinued their searches for full-time employment during periods of part-time employment and for five who left interim employment. The Board adopted the ALJ's finding that strike payments to the former employees were not deductible from gross income back pay.
 
 II.
 
 4
 In response to an employer's unfair labor practices, the Board is authorized to take such remedial action, including reinstatement and back pay, as will effectuate the policies of the National Labor Relations Act. See 29 U.S.C. Sec. 160(c). The Board enjoys discretion in framing appropriate back pay remedies, NLRB v. McAllister Bros., Inc., 819 F.2d 439, 446 (4th Cir.1987), and to the extent that the Board's decision rests on findings of fact for which there is "substantial evidence" in the record as a whole, this court must defer to that decision. 29 U.S.C. Sec. 160(e); Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 215-16, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964); Universal Camera Corp. v. NLRB, 340 U.S. 474, 477-91, 71 S.Ct. 456, 459-66, 95 L.Ed. 456 (1951).
 
 
 5
 Once the amount of back pay due a worker has been established, the burden shifts to the employer to produce evidence to mitigate its liability. NLRB v. Mercy Peninsula Ambulance Service, Inc., 589 F.2d 1014, 1017 (9th Cir.1979). Deductions are made from a worker's gross back pay for the worker's interim earnings and for losses that were wilfully incurred by an unjustified refusal to take substantially equivalent employment. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197-200, 61 S.Ct. 845, 853-55, 85 L.Ed. 1271 (1941). The defense of a wilful loss of earnings, however, is an affirmative defense and it is the employer's responsibility to carry that burden. Florence Printing Co. v. NLRB, 376 F.2d 216, 223 (4th Cir.1967), cert. denied, 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967); NLRB v. Madison Courier, Inc., 472 F.2d 1307, 1321 (D.C.Cir.1972). After reviewing the record, we conclude that the challenged findings are sufficiently supported by the evidence and that the employer has not adequately rebutted the Board's back pay findings.
 
 
 6
 The reasonableness of a worker's effort to secure substantially equivalent employment is determined by, inter alia, the economic climate in which the worker finds himself, the worker's skill and qualifications, and the worker's age and personal limitations. Many factors made it difficult for the forty-six former Lundy Packing employees in this case to secure substantially equivalent employment. Lundy Packing Co., 286 NLRB No. 11 (September 30, 1987). The company's plant is located in an area of rural North Carolina that experienced increasing unemployment rates throughout the back pay period. There were few large employers in the relevant geographic area and many area employers laid off employees or closed down operations during the back pay period. The workers generally were unskilled laborers who lacked formal education. Many of them were illiterate. There was no evidence before the Board that any of the workers refused offers of interim employment. To the contrary, many mitigated the company's back pay liability by accepting part-time and seasonal jobs at lower wages and under less desirable working conditions. Such factual determinations are the province of the Board and will not be disturbed if supported, as they are here, by substantial evidence in the record. Clearwater Finishing Co. v. NLRB, 670 F.2d 464, 467-68 (4th Cir.1982).
 
 
 7
 On the facts presented here, we also adopt the Board's findings that no wilful loss of earnings occurred in those instances where certain workers terminated interim employment or discontinued otherwise diligent searches for full-time employment after accepting part-time or seasonal jobs. A failure to retain interim employment that is substantially less remunerative than his previous job does not provide a basis for reducing a worker's back pay award. Chem Fab Corp., 275 NLRB 21, 24 (1985). In addition, tolling back pay for workers who accept part-time or seasonal employment and discontinue otherwise reasonable job searches has the effect of condemning those workers for accepting part-time jobs, despite the fact that the earnings from such jobs serve to mitigate the employer's back pay liability. NLRB v. Ohio Hoist Mfg. Co., 496 F.2d 14, 15 (6th Cir.1974); Lundy Packing Co., 286 NLRB No. 11 (September 30, 1987). Whether a worker has acted reasonably in accepting or rejecting particular employment is preeminently a question of fact, Florence Printing Co. v. NLRB, 376 F.2d 216, 221 (4th Cir.1967), and the Board's findings have ample support in the record.
 
 III.
 
 8
 Finally, we reject petitioner's contention that the Board erred when it upheld the ALJ's decision to quash the company's subpoena of the union's records which showed the payment of strike benefits to the workers during the back pay period. Absent evidence that workers were being paid for their picketing activity, strike benefits are deemed to be "collateral" and therefore do not operate to diminish a back pay award. NLRB v. Rice Lake Creamery Co., 365 F.2d 888, 893 (D.C.Cir.1966). Accord Florence Printing, 376 F.2d at 218-20.
 
 
 9
 Although twenty-seven of the workers were vigorously cross-examined at the back pay hearing, the company failed to establish any nexus between strike benefits received and picketing activity. Many individuals received strike benefits despite the fact that they did not picket. Others stopped receiving strike benefits when they obtained interim employment yet continued to picket. The evidence sought by the company was not probative of the strike benefits issue and the ALJ did not commit reversible error by quashing the subpoena to compel production of the union's bank records. Accord N.T. Enloe Memorial Hosp. v. NLRB, 682 F.2d 790, 795-96 (9th Cir.1982).
 
 IV.
 
 10
 We have examined the various issues in this case and conclude that the findings of the Board are supported by substantial evidence in the record taken as a whole. Accordingly, the order of the Board is hereby
 
 
 11
 ENFORCED.