927 F.2d 604
 136 L.R.R.M. (BNA) 2648
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
Daniel GERHARDI, d/b/a Daniel's Pallet Service, Respondent.
 No. 90-5512.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1991.
 
 On Application for Enforcement of an Order of the National Labor Relations Board, No. 7-CA-24270(1).
 NLRB
 ORDER ENFORCED.
 Before RYAN and ALAN E. NORRIS, Circuit Judges, ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The National Labor Relations Board ["Board"] seeks enforcement of its Supplemental Decision and Order against Daniel Gerhardi, d/b/a Daniel's Pallet Service ["Company"], for backpay owed two employees constructively discharged in 1985 because of union activities.
 
 
 2
 On February 26, 1987, the Board entered a Decision and Order finding that the Company had violated Sections 8(a)(1) and (a)(3) of the National Labor Relations Act, as amended, 29 U.S.C. Secs. 158(a)(1) and (a)(3), by threatening, harassing, changing working conditions and constructively discharging employees David Crist and Kenneth Earley in retaliation for their Union organizing activities. The Board ordered the Company to cease and desist its unfair labor practices and to reinstate both employees with backpay. NLRB v. Daniel Gerhardi d/b/a Daniel's Pallet Service, 283 N.L.R.B. 34 (1987). In an unpublished opinion entered March 8, 1988, the Sixth Circuit enforced the Board's order.
 
 
 3
 Subsequently, when the parties were unable to agree on the amount owed Crist and Earley, the Board instituted backpay proceedings pursuant to 29 C.F.R. Sec. 102.52 et seq. On August 19, 1988, the Board's Regional Director issued backpay specifications, indicating backpay for Crist and Earley from February 8, 1985, to December 31, 1986, and March 31, 1988, respectively, less their interim earnings. The Company argued, however, that Crist had been willfully idle, had willfully concealed his earnings, and had been unavailable for employment during the backpay period because of a disability. As to Earley, the Company claimed he was due backpay only for the first two quarters of the specified backpay period, had been willfully idle during the remainder of the period, and had willfully concealed earnings.
 
 
 4
 After a hearing before an administrative law judge ["ALJ"], the Board issued its Supplemental Decision and Order adopting the ALJ's finding that Crist and Earley were entitled to backpay for the periods set forth in the specifications. The Company appeals from that decision and order.
 
 
 5
 It is well established that the Board's findings of fact will be overturned on appeal only if the record, taken as a whole, lacks substantial evidence in support of those findings. Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)); NLRB v. Westin Hotel, 758 F.2d 1126, 1130 (6th Cir.1985). In addition, the employer bears the burden of proving any circumstances that would limit its liability. NLRB v. Ohio Hoist Manufacturing Co., 496 F.2d 14 (6th Cir.1974) (per curiam).
 
 
 6
 The record reflects that Crist made substantial efforts to find employment, beginning within one week after his unlawful discharge and continuing for approximately eleven months. His efforts included checking help-wanted sections of newspapers, registering with the Michigan Employment Security Commission ["MESC"], and participating in a job-seeking skills improvement program. In March 1986 he began studying for his "GED" certificate; however, he terminated these studies two months later to accept employment with R.L. Baird Building Company. The evidence is more than adequate to show Crist's diligence in searching for employment.
 
 
 7
 As to the Company's claim regarding Crist's medical problems, although he had a dislocated shoulder, the evidence reflects that this condition did not render him unavailable for work. He continued to perform his work for the Company despite the injury, and subsequently, he was not refused employment because of this condition. Although Crist also developed a nervous condition after his unlawful discharge, the record does not reflect that he was unavailable for work because of that condition. Moreover, the Board found that Crist's nervous condition had occurred as a result of the Company's harassment and discharge. The Board's substantial evidence on this issue brings Crist within the principles announced in Mary Ann's Baking Co. d/b/a Mary Ann's Bakery and Bakery Confectionery Workers' Local Union No. 85, 267 N.L.R.B. 992 (1983) (company cannot escape backpay liability if its actions caused the employee's disabling emotional condition).
 
 
 8
 As to Earley, the evidence shows that he registered with the MESC within one month of his unlawful discharge and applied for many jobs. In addition, he checked the classified columns of newspapers, community bulletin boards, and the telephone directory. He also sought job referrals from friends and acquaintances. As a result of one such referral, he worked as a farm laborer for three weeks in the summer of 1985. In January 1986 he worked for one week stacking lumber at Bielec Custom Carpentry, a seasonal business open annually from April or May through January. He worked for that same company again from July 1986 until January 16, 1987, at which time he was laid off with a promise of recall. Bielec recalled him to work on May 10, 1987, and he worked there until he was laid off a second time on January 22, 1988. During both layoff periods, Earley registered with the MESC and resumed searching for employment. Again, the evidence is more than adequate to show Earley's diligence in seeking work.
 
 
 9
 The Company next argues that Crist and Earley willfully attempted to conceal at least some of their interim earnings. While Crist briefly worked in February 1986 for the Rod Lamb Excavating, the Company failed to show that Crist had earned any wages from that employment. The Company also admitted the possibility that Crist did not receive any pay for that work in view of his friendship with the owner and his hope for full-time employment with the business.
 
 
 10
 As to Earley, while it is true that he originally failed to report his three weeks of farm labor and his first eight days of work with Bielec, he subsequently advised the Board's General Counsel of both. He also had provided all information concerning his Bielec employment other than the initial eight days, thereby indicating a lack of intent to conceal. In view of these facts, the Board's determination as to these issues likewise need not be disturbed.
 
 
 11
 Finally, the Company argues that under NLRB v. Southern Silk Mills, Inc., 242 F.2d 687 (6th Cir.1957), when Crist and Earley could not find substantially similar work, they were obliged to seek lower paying jobs in order to mitigate their losses. In Southern Silk two former employees had not earned any wages during a three year interim period. Here, in marked contrast, Crist and Earley accepted lower-paying employment and temporary employment, in addition to securing training for alternative employment. Under these facts, the Board did not err in declining to apply the so-called "lower sights" doctrine. Substantial evidence supports the Board's finding that any loss of earnings by Crist or by Earley was not willful.
 
 
 12
 As to the Company's remaining arguments, we find them without merit. Therefore, the Board's Supplemental Decision and Order will be ENFORCED.
 
 
 
 *
 The Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation