**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**BROWN–GRAVES LUMBER COMPANY, Respondent.**

**No. 91–5080.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 13, 1991.

Decided Nov. 13, 1991.

Rehearing and Rehearing En Banc Denied Jan. 13, 1992.

Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, Collis Suzanne Stocking, Joseph J. Jablonski, Jr. (argued and briefed), N.L.R.B., Office of Gen. Counsel, Washington, D.C., Frederick Calatrello, Director, N.L.R.B., Region 8, Cleveland, Ohio, for petitioner.

Gary W. Spring (argued and briefed), George W. Rooney (briefed), Roetzel & Andress, Akron, Ohio, for respondent.

Before MARTIN and MILBURN, Circuit Judges, and JOINER, Senior District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Brown–Graves Lumber Company appeals the National Labor Relations Board decision that the company violated the National Labor Relations Act when it unilaterally retained "casual labor" after the contract with its union workers expired. The Board found that Brown–Graves' unilateral action precluded the occurrence of a valid, good-faith bargaining impasse and that the company's subsequent implementation of contract proposals resulted in additional violations of the Act. In both matters, the Board's decision represents a departure from the administrative law judge's initial determination, which found no fault on Brown–Graves' part. For the following reasons, we affirm the Board's decision.

On August 31, 1986, the most recent collective bargaining agreement between Brown–Graves and Local Union No. 1242, United Brotherhood of Carpenters and Joiners of America, expired. The three-year agreement, which the parties entered into in 1983, allowed the company to use casual labor (non-union labor) to do certain unit work from March 15 through November 30 of each contract year. Any use of casual labor beyond November 30 required the union's consent.

The parties began negotiations for a new contract on July 31, 1986, and continued talks through December 22, 1986. At an early stage of negotiations, the parties ten-

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

tatively agreed that casual labor use would be permitted year round. After this point, contract negotiations began to stall. At the November 12 meeting, Brown–Graves told the union it intended to retain casual labor beyond November 30, 1986, even though the parties had not reached a final collective-bargaining agreement. The union objected to this proposed unilateral change at the November 12 meeting. Requests by the company in 1984 and 1985 to retain casual laborers after the November 30 deadline had elicited similar union objections in both years. In 1984 and 1985, Brown–Graves responded to the union's refusal to allow the retention of casual labor after November 30 by hiring the casual laborers as regular unit employees. In 1986, however, the company responded in a different fashion: it retained the casual labor *as casual laborers* to perform unit work. The distinction between the practice of 1984 and 1985, and that of 1986, is crucial.

At the next negotiations meeting on December 8, the company presented its final contract offer, which the union rejected. The subject of the casual laborers, who were now retained by the company in violation of the November 30 deadline, did not come up. On December 15 and 18, further meetings were held but were fruitless. On December 22, Brown–Graves declared the parties were at an impasse and unilaterally implemented the terms of its December 8 offer.

The questions on appeal are two-fold and concern the Board's finding that Brown–Graves violated the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). First, did the retention of casual labor after November 30, 1986 equal a material, substantial, or significant unilateral change in the terms and conditions of the bargaining unit employees? The administrative law judge found that there was no substantial unilateral change following the company's retention of casual laborers while the Board found that there was. Second, was the bargaining impasse in December valid or was it tainted by Brown–Graves' retention of casual labor after the November 30 deadline? The administrative law judge

found that Brown–Graves' behavior was not deleterious and that a valid impasse occurred. The Board, after finding that the retention of the casual labor constituted a substantial unilateral change, held that this unilateral act tainted subsequent negotiations such that a valid good-faith impasse did not occur in December. Resolution of the second question is inextricably linked with the resolution of the first question. There are essentially no *factual* issues in dispute. The parties dispute only the legal meaning to be attributed to the facts.

■ The starting point for our analysis is the standard of review for the Board's determinations. We uphold the Board's findings of fact where "substantial evidence" in the record supports the Board's findings. *NLRB v. C.J.R. Transfer,* 936 F.2d 279, 280 (6th Cir.1991). *See also NLRB v. Baja's Place,* 733 F.2d 416, 422 (6th Cir.1984); *NLRB v. Fry Foods, Inc.,* 609 F.2d 267, 271 (6th Cir.1979). The Board's application of law to the facts is also reviewed under the substantial evidence standard. *Turnbull Cone Baking Co. v. NLRB,* 778 F.2d 292, 295 (6th Cir. 1985). Generally, "[w]here there is substantial evidence in the record as a whole to support the Board's conclusions, they may not be disturbed upon appeal." *Kux Mfg. Co. v. NLRB,* 890 F.2d 804, 808 (6th Cir.1989); *see also Hyatt Corp. v. NLRB,* 939 F.2d 361, 366 (6th Cir.1991). In fact, such conclusions may not be disturbed, even if we could justifiably have made a different choice judging the matter de novo. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–64, 95 L.Ed. 456 (1951).

■ In determining whether evidence is substantial, the court must "take into account whatever the record fairly detracts from its weight." *Id.* at 488, 71 S.Ct. at 464. Evidence is considered substantial if it is adequate to a reasonable mind to uphold the decision. *Id.* at 477, 71 S.Ct. at 459. The "substantialness" of a Board conclusion may be diminished, however, when the administrative law judge has

drawn different conclusions. *Id.* at 496, 71 S.Ct. at 468. We held in *Litton Microwave Cooking Products v. NLRB* as follows:

Although the Board is free to find facts and to draw inferences different from those of the administrative law judge, a "reviewing court has an obligation to examine more carefully the evidence in cases where a conflict exists." The significance, on review, of an administrative law judge's decision largely depends on the importance of witness credibility in the particular case.

868 F.2d 854, 857 (6th Cir.1989) (citing *Pease Co. v. NLRB*, 666 F.2d 1044, 1047–48 (6th Cir.1981)) (citations omitted). This is consistent with Supreme Court interpretation. *See Universal Camera*, 340 U.S. at 487–88, 71 S.Ct. at 463–64.

■ The first issue we must address is whether the company's retention of casual labor after November 30 was a substantial, material, and unlawful unilateral change constituting a violation of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). The divergent conclusions reached by the administrative law judge and the Board on this point have nothing to do with witness credibility but rather with different interpretations of the significance of the retention of casual labor in 1986, as opposed to the practices of 1984 and 1985. The substantial evidence test applies.

Brown–Graves argues that "[r]egular employees could not be displaced by casual labor under the terms of either the 1983 Agreement nor the implemented terms" and that "using casuals had no effect on unit work opportunities and was merely a matter of intrinsic management." The administrative law judge agreed with the company's position and deemed that the only difference in 1986 from the 1984 and 1985 practice was "differing abstract entries on employer records." The Board, in reaching its contrary conclusion, found that the administrative law judge overlooked the effect of Brown–Graves' actions in 1986, failing to properly distinguish between unit employees as a group and the individual persons who were members of the unit. The Board explained why the 1986 retention of casual labor was significantly different than that in 1984 and 1985:

When the casual employees were hired as unit employees after November 30, in 1984 and 1985, the unit work which had been temporarily removed from the unit between March 15 and November 30 ... was returned to the unit on expiration of the period specified by [the] contractual provision. In contrast, when the casual employees continued to be retained as nonunit employees beyond the contractually specified period, as was done in 1986, the unit work assigned to them effectively was permanently removed from the unit. Thus, [Brown–Graves'] retention of casuals as nonunit employees in 1986 had a substantial effect on the unit employees as a group because post-November 30 work opportunities formerly enjoyed by fellow unit employees (i.e., casuals subsequently hired as regular unit employees) were no longer available and would no longer be performed under the unit's own terms and conditions of employment.

■ It should be noted that a bargaining unit is comprised of jobs or job classifications and not of the particular persons working at those jobs. Thus, enlarging a unit by hiring additional unit employees when additional unit work is available does not impair the integrity of the unit. However, hiring people outside the unit to do that work does impair the unit's integrity. *Blue Grass Provision v. NLRB*, 636 F.2d 1127, 1130 (6th Cir.1980). As the Board observed, even if the company retained none of the casual laborers long enough after November 30 for such to have become union members, the impact was still substantial:

Contrary to the Company's premise, membership in the bargaining unit represented by the Union is not dependent on membership in the Union. Indeed, in the parties' contract, the Company recognizes the Union as the 'sole and exclusive bargaining agent' of all those 'who are employed in or about the Warehouse[,] ... Yard, Shop, Factory.... This includes the Company's "new" or "probationary" employees—whose rights are

defined in the contract. Those rights are very different from those of casual employees.

The Board's construction of the legal significance of the facts is upheld. Admittedly, both the administrative law judge's determination and that of the Board are supported by the evidence. This does not mean, however, that the Board's conclusion, which contradicts that of the administrative law judge, cannot meet the requirements of the "substantial evidence standard." *See Litton Microwave*, 868 F.2d at 857. The Board's determination is based upon undisputed facts that are unrelated to any observation of witness credibility or witness demeanor by the administrative law judge. The evidence relied upon by the Board is adequate to a reasonable mind to uphold the Board's decision and thus the substantial evidence test has been fully satisfied. *Id. See also Universal Camera*, 340 U.S. at 477, 71 S.Ct. at 459.

■ Brown–Graves attempts an alternative argument that the tentative agreement reached in August with the Union constituted a waiver to the retention of casual labor after November 30. Under *Nabors Trailers, Inc. v. NLRB*, 910 F.2d 268, 273 (5th Cir.1990), if there is clear notice and an opportunity afforded a union to negotiate prior to implementation, the unilateral act may be lawful. The Board found here, however, that the union's tentative agreement to retain the casual labor was simply a part of the process of negotiating the new contract and was not a waiver.

■ Again, the substantial evidence supports the Board's findings on the waiver claim. The Board construed the union's agreement during the early negotiations in August to permit the retention of casuals as an agreement made purely in the context of furthering the bargaining process. The union did not intend that its "agreement" of early August be implemented in lieu of the new contract being completed. This fact is evidenced by the union's subsequent objection to the November 12 announcement by Brown–Graves that it would be extending the use of casual labor-

ers after November 30. To allow Brown–Graves to use the August agreement as a way to circumvent the failure of the parties to successfully close on the bargain would be absurd. *See NLRB v. Marriott In-Flight Services*, 729 F.2d 1441 (2d Cir.1983) (company is not free to implement proposed changes or those only tentatively agreed upon, in the absence of consent or a valid pre-existing impasse). Waiver of a union's statutory right to bargain over a mandatory subject will not be inferred lightly and must be in "clear and unmistakable language." *NL Industries v. NLRB*, 536 F.2d 786, 788–89 (8th Cir.1976); *Accord Tocco Div. of Park–Ohio Industries v. NLRB*, 702 F.2d 624, 628 (6th Cir.1983). No "clear and unmistakable language" of waiver exists in this case.

■ The second question raised on appeal concerns whether a valid, good-faith bargaining impasse was reached prior to Brown–Graves' implementation of its final offer on December 22. Absent a valid, good-faith impasse, a company's actions constitute a breach of its duty to bargain under § 8(a)(5) and (d) of the National Labor Relations Act. 29 U.S.C. § 158(a)(5), (d). *NLRB v. Katz*, 369 U.S. 736, 743–48, 82 S.Ct. 1107, 1111–14, 8 L.Ed.2d 230 (1962). Admittedly, there may be instances where a valid impasse follows an unlawful unilateral change. *See Katz*, 369 U.S. at 748, 82 S.Ct. at 1114 (Supreme Court suggested "that there might be circumstances which the Board could or should accept as excusing or justifying unilateral action" so that a subsequent valid impasse may occur); *NLRB v. Cauthorne Trucking*, 691 F.2d 1023 (D.C.Cir.1982) (court found valid impasse after a unilateral change). Again, the standard of review is crucial to our determination and, again, the standard for scrutinizing the Board's determination on the impasse issue is whether or not its determination is supported by substantial evidence. *NLRB v. Central Plumbing Co.*, 492 F.2d 1252, 1254 (6th Cir.1972).

Brown–Graves argues that, even if a substantial and unlawful unilateral change occurred with the company's retention of casual labor, a good-faith bargaining im-

passe took place in December, permitting the company's implementation of its contract terms. The Board agreed with the company's initial proposition that a good faith impasse *could* occur, even following an unlawful unilateral change. The Board found, however, that negotiations were fatally tainted after Brown–Graves made clear its intention to retain the casual laborers beyond November 30 and therefore no good-faith impasse could occur in late December when Brown–Graves implemented its contract terms.

The Board relies on various factors in making its finding that a good-faith impasse was not possible. For example, the Board acknowledges that the parties continued negotiating after November 30; however, the parties did not discuss further the casual labor issue. To the Board, this "omission of what had been an integral part of the economic package is critical." Further, the Board observed, the casual labor issue was inextricably tied to other matters being negotiated between the company and the union in the company's efforts to reduce expenses by $2.09 per hour. Consequently, the company's unilateral actions deprived the parties of an element of flexibility and hampered subsequent bargaining because the important issue of casual labor was now removed from the negotiations table. The Board's determination on this and all other matters meets the requirements of the substantial evidence test.

The Board's motion to enforce is granted.