67 F.3d 300
 151 L.R.R.M. (BNA) 2224
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner-Cross-Respondent,
v.
POPE CONCRETE PRODUCTS, INC., Respondent-Cross-Petitioner.
 Nos. 94-5727, 94-5846.
 United States Court of Appeals, Sixth Circuit.
 Oct. 5, 1995.
 
 Before: MILBURN and NELSON, Circuit Judges, and MORTON,* District Judge.
 PER CURIAM.
 
 
 1
 Petitioner National Labor Relations Board ("Board") seeks enforcement under 29 U.S.C. Sec. 160(e) of its supplemental decision and order directing respondent Pope Concrete Products, Inc. ("Pope") to pay Daythel Buie backpay. Respondent cross-petitions for review of the Board's supplemental decision and order under 29 U.S.C. Sec. 160(f). On appeal, the issue is whether the Board's determination of the backpay due employee Buie was correct. For the reasons that follow, we enforce the Board's order and deny the cross-petition for review.
 
 I.
 A.
 
 2
 Daythel Buie worked for Pope as a sand and gravel dump truck driver from March 27, 1989, until Pope discharged him on September 27, 1989, because of his union activities. The Board found this discharge to be a violation of section 8(a)(1) and (3) of the National Labor Relations Act, 28 U.S.C. Sec. 158(a)(1) & (3), and ordered Pope to reinstate Buie and make him whole for any lost wages. On August 17, 1992, in a prior appeal, this court enforced the Board's remedial order, requiring, in part, that Pope offer Buie full reinstatement and make him whole for any lost wages he suffered from the unlawful discrimination against him.
 
 
 3
 The parties, however, were unable to agree as to the proper amount of backpay, and a backpay proceeding was instituted. At the backpay hearing before an administrative law judge ("ALJ"), Buie testified that he began to search for interim employment shortly after his discharge by Pope. Buie's wife documented Buie's search for interim employment, as is required by the National Labor Relations Board Case Handling Manual in order to claim backpay, by completing a Form 26, National Labor Relations Board Employment and Expense Data Sheet, for each quarter following his discharge.[1] Buie filed these forms with the Board after the end of each period. In addition to completing these forms, Buie presented three notebooks at the backpay hearing that were handwritten copies of three original notebooks that his wife compiled during his search for interim employment. Buie testified at the hearing that the original notebooks were lost or missing. The handwritten notebook log described a significantly larger number of job applications than the forms Buie submitted to the Board. During the period from the third quarter of 1989 to the fourth quarter of 1991, the forms described 58 applications for employment, while the log detailed 677 job applications.
 
 
 4
 During Buie's backpay period, both the log and the expense forms reflected that Buie was employed by Houston Trucking Company ("Houston") for six months. He left that job in September 1990, however, because the dusty conditions of the work aggravated his psoriasis.[2] Later in September and in early October of 1990, the log shows that Buie's daughter was in the hospital recovering from an automobile accident. Buie's wife wrote: "9-21 through 10-7 daughter in auto accident in critical condition in hospital." J.A. 107. Throughout the backpay period, Buie was registered for work with Tennessee unemployment services.
 
 
 5
 On March 9, 1992, Pope reinstated Buie. Buie complained, however, that he was getting too few loads and, therefore, too little pay. On April 16, 1992, Jeff Pope testified at the hearing before an ALJ that he offered Buie any schedule he wanted. On May 4, 1992, Buie quit his job with Pope because of his psoriasis. Buie was no longer available for work after this date.
 
 B.
 
 6
 On December 28, 1992, the Board's Regional Director issued a first amended compliance specification and notice of hearing. The specification set forth for each calendar quarter from September 27, 1989, to September 1, 1992, the gross backpay due Buie because of the discrimination against him, his interim earnings, and the net backpay due. The specification further alleged that Pope did not fully reinstate Buie when it returned him to a company job on March 9, 1992, and that Buie's employment with Pope from March 9, 1992, to May 4, 1992, represented only interim employment. Finally, the specification stated that backpay ceased to accrue on May 4, 1992, when Buie left Pope because of medical problems and became unavailable for work for the remainder of the period.
 
 
 7
 In its answer to the compliance specification, Pope did not dispute the method that the Regional Director used to calculate the backpay, but it did assert several affirmative defenses. After a hearing on April 27 and 28, 1993, the ALJ issued a supplemental decision, dated July 8, 1993, recommending payment to Buie in the amount of $32,421.93, plus accrued interest, minus deductions for taxes. Exceptions were entered to this recommendation, and on November 18, 1993, the Board issued its supplemental decision and order, adopting the ALJ's finding that Pope had not established any facts in mitigation of the backpay liability and concluding that Buie was entitled to the full amount of backpay set out in the specification and the supplemental decision.
 
 
 8
 The Board filed an application for enforcement on June 9, 1994, and respondent Pope cross-petitioned for review of the Board's supplemental decision and order on June 29, 1994. Both of these filings are timely as the National Labor Relations Act places no time limit on such filings.
 
 II.
 
 9
 Respondent Pope argues that the Board incorrectly determined the amount of backpay due employee Daythel Buie. In a backpay proceeding, the General Counsel's burden is to show the gross amount of backpay due the claimant. NLRB v. Ohio Hoist Manufacturing Co., 496 F.2d 14, 15 (6th Cir.1974) (per curiam) (citing NLRB v. Brown & Root, Inc., 311 F.2d 447, 454 (8th Cir.1963)). The burden then shifts to the employer to prove any factors that would mitigate its backpay liability, such as amounts earned from interim employment, or that would negate liability, such as a willful failure to accept available employment. Id.
 
 
 10
 Our review of the Board's backpay determination is limited. This court repeatedly "has held that the Board possesses broad discretionary authority in awarding backpay as a remedy, and the exercise of this discretion is subject to limited judicial scrutiny." NLRB v. Ryder Sys., Inc., 983 F.2d 705, 709 (6th Cir.1993); see also Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 216 (1964); NLRB v. Westin Hotel, 758 F.2d 1126, 1129 (6th Cir.1985). We will not disturb the Board's factual findings if there is substantial evidence in the record, examined as a whole, to support its conclusions. Gatliff Coal Co. v. NLRB, 953 F.2d 247, 250 (6th Cir.1992) (citing NLRB v. Brown-Graves Lumber, 949 F.2d 194, 196 (6th Cir.1991)). Evidence is substantial if "it is adequate to a reasonable mind to uphold the decision." Id. at 250-51; see Turnbull Cone Baking Co. v. NLRB, 778 F.2d 292, 295 (6th Cir.1985) (per curiam), cert. denied, 476 U.S. 1159 (1986). We use the same standard to review the Board's application of law to the facts. Id.
 
 
 11
 Respondent Pope makes several challenges to the Board's backpay computation. Pope first argues that Buie failed to make a reasonable effort to find interim employment and that this failure negates its backpay liability. This court has held that, if an employee fails to make a reasonable effort to obtain interim employment and thereby incurs a willful loss of earnings, this fact can be used to offset the backpay liability of the wrongdoer. Westin Hotel, 758 F.2d at 1129. However, "a wrongfully-discharged employee is only required to make a reasonable effort to mitigate damages, and is not held to the highest standard of diligence. This burden is not onerous and does not mandate that the plaintiff be successful in mitigating the damage." Id. at 1130. The burden to prove that an employee incurred a willful loss of earnings is on the employer. Id.
 
 
 12
 The ALJ found on the basis of the record as a whole that "Buie diligently searched for alternative work," J.A. 6, and the Board adopted the ALJ's order. However, in support of its contention that Buie's search was not reasonable, Pope argues that the ALJ relied on the job search log notebooks, which were erroneously admitted into evidence, in making this determination. According to Pope, the log notebooks should not have been admitted under Federal Rule of Evidence 803(5), which provides an exception to the rule against hearsay for recorded recollections that were made when the matter was fresh in the witness's memory and that reflect the witness's knowledge correctly. Pope asserts that the log books and expense forms "were very different and totally contradictory to each other," Brief of Respondent-Appellant at 6, and contends that these inconsistencies, among other factors, undermine the trustworthiness of the notebooks. The Board's supplemental decision and order, however, addressed this alleged conflict as follows: "The differences cited between Buie's personal records and the records submitted to the Region are an insufficient basis, in light of the record as a whole, on which to overturn the judge's credibility resolutions." J.A. 11. Pope alternatively argues that even if the notebooks were admissible into evidence, the ALJ should not have given them any weight in determining whether Buie's search for alternative employment was adequate. Pope contends that the ALJ instead should have based his reasonableness determination on the expense forms and other evidence alone.
 
 
 13
 Even without considering the log notebooks detailing the job search, there is substantial evidence in the record to support the Board's finding that Buie's search for employment was reasonable. In fact, the ALJ's order does not specifically mention the log notebooks as support for its conclusion. It does, however, discuss several other factors. Buie testified that he began to search for interim employment shortly after his discharge and that he looked "[f]rom two to three days a week from three to four places of employment per day." J.A. 176. He also testified to meeting with particular people at some of the places that he visited, and his wife, who accompanied him on his trips, corroborated his testimony. The ALJ found that the Buies were "credible witnesses in respect to the matters involving job search." J.A. 6. We ordinarily will not disregard the credibility assessments of an ALJ who has had an opportunity to observe the demeanor of a witness. NLRB v. Baja's Place, 733 F.2d 416, 421 (6th Cir.1984) (per curiam). See also Local Union No. 948 v. NLRB, 697 F.2d 113, 117 (6th Cir.1982) ("The standard for review for the Board's determinations of credibility is narrow. Because the Administrative Law Judge and the Board are the triers of fact in the first instance, their credibility resolutions are to be accorded considerable weight on review."). Furthermore, during six months of the backpay period, Buie accepted interim employment with Houston Trucking Company. In the remainder of the period, considering only the information contained in the expense forms, Buie made at least 58 job applications. Because the entire backpay period must be examined to determine whether there was a reasonable search for employment, we conclude that there is substantial evidence to support the Board's finding.
 
 
 14
 Second, Pope argues that the Board incorrectly determined Buie's backpay because it failed to consider Buie's alleged unavailability for work while his daughter was in the hospital. Buie indicated in his log notebooks that his daughter was hospitalized and in critical condition from September 21 to October 7, 1990, and in an application for unemployment compensation on October 2, Buie stated he was unavailable to work afternoons because of child care responsibilities. Pope contends that these documents constitute an admission that Buie "could not have worked either for his former employer or for any new employer where he might have obtained interim employment." Brief for Respondent-Appellant at 12. However, the Board determined that, because Buie's unemployment application indicated that he continued to be available for work at other times during the day, Buie had not removed himself from the job market during the period in question. Albert Pope testified at the backpay hearing that, before the enactment of the federal maximum-hour regulations, the drivers were working up to sixteen hours per day, six days per week. Jeff Pope also testified that the sand pit in Perryville opened at 4:00 a.m. Therefore, we find substantial evidence in the record to support the Board's finding that Buie could have fulfilled the obligations of a job at times other than afternoons and conclude that the Board properly denied Pope's request for a reduction in backpay during this time period.
 
 
 15
 Third, Pope argues that, in considering whether it fully reinstated Buie, the Board failed to consider federal regulations lowering the maximum work hours per day and per week for drivers. However, the ALJ compared Buie's average weekly wages to those of Dalton Hall, the driver who drove the truck to which Buie would have been assigned had he not been unlawfully discharged, and found that Hall's weekly average was $21.56 more than Buie's. Respondent claims that these reduced hours and wages resulted in part from the new federal regulations. The ALJ's comparison demonstrates, however, that even working within the federal regulations, Hall earned more per hour and per day than Buie because Pope assigned Hall to Buie's truck. We conclude therefore that substantial evidence supports the Board's finding that Pope did not fully reinstate Buie on March 9, 1992.
 
 
 16
 Finally, Pope contends that the Board erroneously failed to determine that Pope fully reinstated Buie when it offered him a revised work schedule in April 1992. Pope argues that Jeff Pope's comment to Buie on April 16, 1992 that "he could have any loads he wanted at this time" brought Pope into full compliance with the Board's reinstatement order, and, therefore, the running of gross backpay should stop at that point. J.A. 193. However, Pope did not raise this point in its answer to the first amended compliance specification and notice of hearing issued by the Acting Regional Director of the National Labor Relations Board for Region 26. The Board's Rules and Regulations, Series 8 provide, in relevant part:
 
 
 17
 (b) ... [I]f the respondent disputes either the accuracy of the figures in the specification or the premises on which they are based, the answer shall specifically state the basis for such disagreement, setting forth in detail the respondent's position as to the applicable premises and furnishing the appropriate supporting figures.
 
 
 18
 (c) ... If the respondent files an answer to the specification but fails to deny any allegation of the specification in the manner required by paragraph (b) of this section, and the failure so to deny is not adequately explained, such allegation shall be deemed to be admitted to be true, and may be so found by the Board without the taking of evidence supporting such allegation, and the respondent shall be precluded from introducing any evidence controverting the allegation.
 
 
 19
 29 C.F.R. Sec. 102.56(b) & (c). We conclude that respondent Pope's failure to raise this affirmative defense in its answer precludes it from raising the issue at this time. Cf. Brotherhood of Locomotive Eng'rs v. ICC, 909 F.2d 909, 912-13 (6th Cir.1990) (holding that on appeal from administrative rulings, unless injustice would otherwise result, court will not review an issue not first presented to agency). Accordingly, we hold that the Board's backpay computation was not erroneous and was supported by substantial evidence.
 
 III.
 
 20
 For the reasons stated, the Board's order is ENFORCED and the cross-petition for review is DENIED.
 
 
 
 *
 Honorable L. Clure Morton, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Because Buie's reading and writing skills are limited, Buie's wife, Patsy Buie, accompanied Buie throughout his search for interim employment in order to help him fill out job applications and to keep records of those applications
 
 
 [2]
 Buie contracted psoriasis when he was fourteen years old. While working at Houston, Buie was exposed to clay dust that aggravated his condition. Buie's condition became so severe that his doctor advised him to quit his job at Houston