73 F.3d 362
 151 L.R.R.M. (BNA) 2224
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
IRONTON PUBLICATIONS, INC., Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.
 Nos. 94-5883, 94-5931.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1995.
 
 BEFORE: MARTIN and BATCHELDER, Circuit Judges, and COOK, Chief District Judge.*
 PER CURIAM.
 
 
 1
 This case requires us to decide whether the May 12, 1994, decision of the National Labor Relations Board regarding allegedly unfair labor practices at Ironton Publications, Inc. is based on substantial evidence. The Board's decision and order is reported at 313 NLRB No. 214. We believe that there is substantial evidence on the record as a whole to support the Board's findings and conclusions except for its determination in subparagraph 2(a) of its order that the Company should promote James Jenkins to the position of assistant foreman and make him whole for any loss of earnings and other benefits. We do not believe there is substantial evidence to support a finding that James Jenkins would have been promoted to assistant foreman and that the Company's failure to promote him therefore violated 29 U.S.C. Secs. 158(a)(1) and (a)(3). Also, we do not believe that the Company violated 29 U.S.C. Secs. 158(a)(1), (a)(3) and (a)(5) by correcting James Jenkins's terms of employment to comply with the contract negotiated by the Union. Therefore, we do not believe that the Company is required to make James Jenkins whole for benefits to which he was not entitled in the first instance. We do not, however, disturb that part of subparagraph 2(a) ordering Jenkins removed from the 4-year training program. Therefore, we enforce all of the Board's Order except those parts of subparagraph 2(a) regarding Jenkins's promotion and restitution.
 
 
 2
 The issues before us on appeal arose out of management decisions made by Ironton Publications, Inc. through its publisher, Jennifer Allen, affecting certain employees, some of whom were involved in pro-union activities. Since 1963, the Company's pressroom employees have been part of a collective bargaining unit represented exclusively by the Athens Printing Pressmen & Assistants Union No. 269-M, an affiliate of the Graphic Communications International Union, AFL-CIO-CLC (the "Union"). As members of the bargaining unit, all employees employed in the operation of the pressroom, except professional and supervisory personnel and guards, are represented by the Union whether or not they are union members. The terms of employment for all non-supervisory employees in the pressroom, therefore, were to be controlled by a contract negotiated pursuant to the collective bargaining agreement.
 
 
 3
 At the time of the following events, the pressroom employees were working under a contract that ran from May 1990 to May 1993. Historically, there have been three full-time employees in the pressroom--a foreman, an assistant foreman, and a press operator--and two or three employees who worked elsewhere and assisted in the pressroom as needed. The bargaining unit in the pressroom is the Company's only bargaining unit represented by a labor organization. The foreman has been the only employee not represented by the bargaining unit. The administrative law judge found that, despite the existence of the collective bargaining agreement and contract, the Company treated nonunion bargaining unit employees as if they were not members of the bargaining unit.
 
 
 4
 On May 6, 1990, the Company's pressman died and James Jenkins, previously a full-time mailroom employee and part-time pressroom employee since 1988 or 1989, accepted the position of pressman. During and after a one-year training schedule, Jenkins received favorable evaluations and two merit pay increases. The Company later argued that Jenkins did not learn "as quickly as he should have." However, the administrative law judge concluded that Jenkins successfully completed his training program. James Jenkins did not actually join the union until June 1992. Until then, the Company was paying Jenkins a better total compensation according to the terms employee handbook, and not according to the union contract. Jenkins had been participating in the Company's profit-sharing plan, could receive a Christmas bonus, a vacation of three weeks (instead of two for union members), and a workweek of 40 hours (instead of 37 1/2 for union members). Jenkins could also schedule holiday time-off to suit his preference.
 
 
 5
 After Jenkins's union membership came to Allen's attention in November 1992, Allen or Gilmore then told Jenkins that, because he was a member of the Union, he was no longer eligible for the benefits he had received as a nonunion employee. The Company argues that it simply made a mistake by paying Jenkins according to the employee handbook rather than by the terms of the contract, and that it corrected its mistake as soon as it learned of it. The administrative law judge found that the Company had violated 29 U.S.C. Sec. 158 when it informed Jenkins that his work hours would be reduced from 40 to 37 1/2, denied him his 1992 Christmas bonus, denied him participation in the Company's profit sharing plan, reduced his vacation from three to two weeks, refused to permit him to reschedule his 4th of July holiday, placed him on a four-year training program, and failed to promote him to the position of assistant foreman in the pressroom.
 
 
 6
 In November 1992, the pressroom assistant foreman Joe Gann retired. Roger Jenkins, James's brother, was immediately moved to the pressroom full-time. Roger had been a full-time mailroom employee who worked part-time in the pressroom beginning in 1992. He received favorable comments about his work in the pressroom from Dale Buie, an agent of the Company's parent corporation from the Alabama headquarters, and from foreman Gilmore. Buie had asked the Jenkins brothers prior to Roger's re-assignment whether they had a problem working together because Roger's re-assignment would mean they could no longer vacation together. The position of assistant foreman, however, remained vacant.
 
 
 7
 Significantly, also in the Fall of 1992, the Company unilaterally and without prior notice and opportunity to bargain, added the duty of mopping the floors to pressroom unit employee's work assignment. Mopping had formerly been done by the custodial staff. Mopping the pressroom took 20 minutes to perform. The Company argues that it reserved the right in the contract to change or add to the assignments of employees. It argues further that mopping is a de minimis activity and notice and an opportunity to bargain is not required.
 
 
 8
 On January 28, 1993, Allen was questioned by an agent of the Board concerning the unfair labor practice charge relating to changes in James Jenkins's compensation and employment. On January 29, 1993, Roger Jenkins was removed from his full-time pressroom position and another mailroom employee, who had no pressroom experience, was assigned to the pressroom in his place. No explanation was given to Roger, except for a comment by Gilmore that "In my opinion, it's because of James and the Union." On January 28, 1993, Allen told the Board's agent that she was not planning to hire or promote anyone to assistant foreman. One month later, Allen hired Jack Day as assistant foreman. Day had eleven years experience in a pressroom, although the record shows that he was not experienced on the "web-type" press used at Ironton Publications. In fact, after Day was hired, he was put on a one-year training program. Gilmore testified that the only people in the pressroom who could get the paper out were himself and James Jenkins--not Day. Allen testified that she was motivated to hire Day as assistant foreman because she needed an experienced person in the pressroom to replace two former thirty-year employees and because Day said he would be willing to move to other locations owned by Ironton Publication's owners.
 
 
 9
 Finally, in March and April 1993, one of the mailroom employees, Jeff Clutters, began working with Walter Martin, a union representative, to unionize the mailroom. The administrative law judge found that discussions concerning the union took place in the mail room among Clutters, Roger Jenkins, Shawn Jenkins, and David Mart and could be overheard by anyone desiring to listen. The administrative law judge credited David Mart, a mailroom employee, who testified that he overheard another mailroom employee, Mark Fields, tell the Company's former Circulation Manager, Sherry Beckman, that Clutters, and Roger and Shawn Jenkins were the primary union supporters in the mailroom. Jeff Clutters had yelled out or hollered "majority rules" in the mailroom a few times, and the administrative law judge took this to be an expression of support for the union. The administrative law judge concluded that the management knew of Clutters's union activities when it disciplined him. Also at about this time two instances occurred where the mailroom staff caused a loss of income to the Company by failing to place certain advertising inserts in the paper. Clutters, Roger Jenkins (who was dismissed from the pressroom on January 29) and Shawn Jenkins received discipline notices and were placed on 90 days probation and were later denied pay increases other mailroom employees received. In addition, Roger Jenkins, who acted as assistant foreman in the mailroom when foreman Gary Cochran was absent, did not receive an extra $5 per day for filling in for Cochran for a three-week period when he was absent. The administrative law judge credited Jenkins's testimony that he, and not Sherry Beckman, acted as assistant foreman.
 
 
 10
 As a result of the foregoing events, unfair labor practices charges were filed against the Company. The charge in Case No. 9-CA-27061 was filed on December 1, 1989, and related to the Company's statements in contract negotiations that only bargaining unit employees who did not join the union would be eligible for the company's profit-sharing plan. This case was settled, but the NLRB Regional Director later set aside the settlement because he believed that the Company made James Jenkins ineligible for its plan once it learned that he had joined the union. Nine other charges, as set forth in the administrative law judge's opinion, were filed and amended between January 7, 1993 and May 25, 1993.
 
 
 11
 The administrative law judge found that the Company had violated many provisions of the National Labor Relations Act, including 29 U.S.C. Secs. 158(a)(1), (a)(3), (a)(5),[2] and ordered many remedies. The Company filed exceptions challenging the administrative law judge's findings and conclusions (1) that Jack Day was not and should not be treated as a supervisor; (2) that James Jenkins should be promoted to the position of assistant foreman in the pressroom and should receive benefits pursuant to the company handbook; (3) that the Company knew of Jeff Clutters's pro-union activities and should restore his hours and pay; (4) that the Company illegally added the duty of mopping the pressroom floors without notice and bargaining.
 
 
 12
 On May 12, 1994, the Board affirmed the administrative law judge's order in all respects, except that it did not find that the union had alleged an unlawful plan to reduce the pressroom bargaining unit to one person. The Company petitioned for review, and the Board cross-petitioned for enforcement of its order.
 
 
 13
 As we have said elsewhere, this Court reviews the findings of the Board and upholds them if they are supported by "substantial evidence" in the record. Gatliff Coal Co. v. NLRB, 953 F.2d 247, 250-51 (6th Cir.1992) (citing NLRB v. Brown-Graves Lumber, 949 F.2d 194, 196 (6th Cir.1991)). This Court also uses the substantial evidence standard when reviewing the Board's application of the law to the facts. General Truck Drivers Chauffeurs, Warehousemen & Helpers Local No. 957 v. NLRB, 934 F.2d 732, 735 (6th Cir.1991) (citing Roadway Express, Inc. v. NLRB, 831 F.2d 1285, 1289 (6th Cir.1987)). On appeal, we will not disturb the Board's findings where there is substantial evidence in the record as a whole to support the Board's decision. 29 U.S.C. Sec. 160(e) (1988). Evidence is considered substantial if it is adequate to allow a reasonable mind to uphold the decision. DTR Indus., Inc. v. NLRB, 39 F.3d 106, 110 (6th Cir.1994) (citation omitted). As to the Board's interpretation of the National Labor Relations Act, we have stated that we will accept the Board's construction if it is "reasonably defensible." General Truck Drivers, 934 F.2d at 735 (citing Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979)).
 
 
 14
 We have reviewed this record and while the Company points to some evidence to support its theory as to each issue on review, we cannot say that we are persuaded that the evidence it relies on so detracts from the testimony and other evidence credited by the administrative law judge as to cause us to conclude that the Board's decision, except for part of subparagraph 2(a), is not based on substantial evidence. The Board's decision and order requiring James Jenkins to be promoted to assistant foreman, however, is not based on substantial evidence. Further, the Board's determination that the Company committed an unfair labor practice against James Jenkins by conforming the terms of his employment to the contract is legally erroneous.
 
 
 15
 The Board ordered the Company to promote Jenkins to the position of assistant foreman as a remedy for alleged violations of 29 U.S.C. Secs. 158(a)(1) and (a)(3). In discussing Allen's decision to hire Jack Day as assistant foreman, the administrative law judge states that Jenkins "had the skills to get the paper out but Jack Day did not." The administrative law judge does not point to any other evidence in the record showing that Jenkins had been promised the assistant foreman job, was being considered for it, had applied for it, or was even qualified for it. Despite a lack of evidence in the record that Jenkins was required by the contract to get the promotion or was somehow promised the assistant foreman position, the administrative law judge concluded that it was clear to him that Jenkins should be promoted. The Board ordered the promotion.
 
 
 16
 With respect to remedies that can be ordered for violations of these sections, in NLRB v. Ford Motor Co., we held that the Board could not order the promotion of an employee to a supervisory position. 683 F.2d 156, 158 (6th Cir.1982). The Company argues that the assistant foreman position is a supervisory position under 29 U.S.C. Sec. 152(11). We need not decide this question because we believe that the Board's finding that the Company would have promoted Jenkins but for his protected activities is not supported by substantial evidence. Although the administrative law judge found that Jenkins had received favorable evaluations and merit pay increases, had filled in for the foreman at times, and was the most senior bargaining unit employee in the pressroom, all these facts simply do not establish that the Company did not promote Jenkins because of his union activity. While there is evidence to support a finding that the Company was motivated by an anti-union animus in taking actions against Jenkins, there is not substantial evidence to support the Board's conclusion that the prima facie case had been made that the Company violated the act by not promoting Jenkins to the position of assistant foreman. NLRB v. Transportation Management Corp., 462 U.S. 393, 401-02 (1983) (approving of the Board's burden shifting analysis in "mixed motive" cases; the Board's general counsel bears the initial burden of proving that the employer violated the National Labor Relations Act). The fact that Jenkins was the most senior pressroom employee and was thought to be able to "get the paper out" while Jack Day could not does not represent substantial evidence to establish that the Company would have promoted Jenkins were it not for his pro-union sentiments. No such inference can be drawn from these facts. Although Jenkins had received an overall favorable evaluation by the Company, the Company was not required to promote Jenkins and had never promised him the position. The Company presented evidence that it had considered leaving the position vacant, and the record shows no reason why the Company could not have done so. After leaving it vacant for a time, Allen stated that she wanted to fill the position with a person with more general pressroom experience who was also willing to move to other plants. The Board's conclusion that the Company committed at unfair labor practice by not promoting Jenkins is simply not supported by substantial evidence in this entire record.
 
 
 17
 Finally, the Board erred in determining that it was an unfair labor practice for the Company to begin to pay Jenkins according to the terms of the union contract rather than the employee handbook. The administrative law judge found that the Company discriminated "based on union membership" in violation of Sections 8(a)(1) and (3), when it applied the terms of the collective bargaining agreement to James Jenkins after learning that he had become a member of the union. The administrative law judge also found that the Company's actions violated Sections 8(a)(1) and (5) because the application of the collective bargaining agreement to Jenkins constituted a unilateral change in the terms and conditions of employment for a unit employee without giving the union prior notice or an opportunity to bargain. The Board agreed. Neither the administrative law judge nor the Board, however, cited any legal authority for these conclusions, or for the further and implicit conclusion that the Company was required to bargain for the right not to treat one employee covered by the collective bargaining agreement differently from other covered employees. The administrative law judge's bare citation to Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956), as authority for these propositions is wholly without merit.
 
 
 18
 In the unusual circumstances of this case, to enforce the Board's order would be to hold that under 29 U.S.C. Sec. 158 it is an unfair labor practice for the Company to treat Jenkins according to the terms of the collective bargaining agreement. We cannot agree with the Board's interpretation of law. Accordingly, we VACATE that part of subparagraph 2(a) of the Board's decision requiring the Company to promote James Jenkins to assistant foreman and make him whole, and we ENFORCE all other portions of the Board's order.
 
 
 
 *
 The Honorable Julian A. Cook, Jr., Chief Judge of the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Sections 8(a)(1), (a)(3), and (a)(5) of the National Labor Relations Act provide in pertinent part:
 It shall be an unfair labor practice for an employer--
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 [right to join a labor organization, etc.] of this title;
 * * *
 (3) by discrimination in regard to ... any term or condition of employment to encourage or discourage membership in any labor organization: ...
 (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.